## GAY v. LLOYD.

The acts of congress relative to the authentication of public acts, records, and judicial proceedings, have no reference to inferior tribunals, created by municipal law, such as justices of the peace; but they refer to the proceedings of courts possessing general jurisdiction.

The method of authenticating the correctness of a justice's transcript, is left to the statutory regulations of the respective states; and should conform to the law of the state in which they are to be adduced in evidence.

Under the statute of Iowa, the certificate that the person making a transcript, was a justice of the peace, as therein stated, should come from the clerk of the county court, under the county seal, and not from the clerk of a court of common pleas; unless the laws of the state from which the transcript is brought, should be produced to show that he was the proper officer to certify the same.

Parole evidence that the defendant examined the transcript of a justice, and acknowledged that the judgment had been rendered against him by the justice therein named, is admissible, and entitles the transcript to faith and credit; although the defendant did not admit it to be a correct copy of the original record, and declared the judgment to be unjust, but that it had not been paid.    Such admission concedes the official character of the justice, and the amount of the judgment.    In such an action the justness of the judgment cannot be inquired into.

While it will be presumed in law, that a court of general jurisdiction acted within the sphere of its authority, a court of limited and special jurisdiction will be required to show the law conferring the jurisdiction it exercised.

After the correctness of the judgment and the jurisdiction of the justice, are duly established, the same faith and credit are given to them, as is given to the judgment of a court of general jurisdiction.

ERROR, *to Des Moines District Court.*

*David Rorer,* for the plaintiff in error.

*Grimes* and *Starr,* for the defendant.

*Opinion by* WILSON, J.    This was an action of debt, brought by Lloyd for the use of Prise against Gay, before a justice of the peace, in Des Moines county, on the transcript of a judgment from the docket of Isaac C. Coplen, a justice of the peace of Hamilton county, Ohio, wherein Lloyd was

plaintiff, and Gay defendant. Judgment was rendered against Gay by the justice of the peace in Des Moines county, and the case was appealed to the district court, where judgment was also rendered against Gay. The case is brought into this court by writ of error. The transcript from Coplen's docket was certified by him to be correct; there are also two other certificates appended to the transcript, one purporting to be from the clerk of the court of common pleas, of Hamilton county, Ohio, certifying to the official character of Coplen, and sealed with the seal of that court; and lastly, the certificate of the presiding judge of the court last mentioned, as to the official character of the clerk of the court. The case was tried before the justice of the peace, in Des Moines county, and also in the district court on issue joined, on the plea of *nul tiel record.* On the trial in the district court exceptions were taken by Gay, which are set forth in the bill as follows, to wit :

" Be it remembered, that on the trial of this cause in the district court, the plaintiff offered in evidence to the jury, an alleged transcript of a record, and the certificates thereto annexed, and then proved by parole evidence, that said transcript had been presented to the defendant, and examined by him, and that he then admitted that the judgment had been rendered against him, by the justice before whom it purports to have been rendered ; but the witness could not say that the defendant admitted the transcript to be a true copy of the original record of said justice ; but the defendant at the same time, said that the judgment, so admitted to have been rendered against him, was unjust, and that he had never paid it. And thereupon, without any other evidence, the transcript was offered and read to the jury ; to which the defendant objected : 1. For want of proper and legal authentication under the act of congress, of May 26, 1790; or under any other act of congress. 2. The transcript is not sufficiently certified under the statute of Iowa ; or otherwise sufficiently and legally proven. 3. Section 19, Rev. Stat., 329, is unconstitutional and inoperative. These objections were severally overruled by the court, and the transcript and certificate were allowed to go in

evidence to the jury, without any other authentication. To all which the defendant excepted.

Be it farther remembered, that on the same trial, after the argument of counsel, the court charged the jury that said transcript was entitled to full faith and credit here, no matter how proven, whether under the statute of Iowa, or by parole evidence, to be an exemplified copy, the same as if certified in strict conformity with the act of congress, in relation to the manner of proving the judicial proceedings and records of the courts of the several states, in each state and territory respectively, passed May 26, 1790; and that the justice of said judgment could not be inquired into in this action.

And under the proof aforesaid, after the court had charged the jury as aforesaid, the defendant moved the court to charge the jury, that the justness of said supposed judgment is open to inquiry in this trial. That defendant's admissions must all be taken together, if proven by plaintiff, and that if the jury find the proof to be, that said judgment was unjust, then they must find for the defendant; which charge the court refused to give to the jury. To which refusal the plaintiff excepts, &c."

The following errors are assigned:

1. In admitting to the jury, as evidence, the supposed transcript of the judgment.

2. In admitting parole proof of the correctness thereof.

3. In instructing the jury that the justness of the judgment could not be brought in question.

4. In refusing the instructions asked for by defendant in the court below.

5. In giving those asked for by the plaintiff in the court below.

We will consider these objections in the order in which they are presented in the bill of exceptions; and,

1. Was the transcript properly admitted as evidence to the jury?

The act of congress, of May 26, 1790, entitled an "Act to prescribe the mode in which the public acts, records, and judicial proceedings, in each state, shall be authenticated, so as to

Gay v. Lloyd.

take effect in every other state," and the act supplementary thereto, approved March 27, 1804, do not provide a mode for certifying the judgments of justices of the peace. Such is the decision of the courts of New Hampshire, Massachusetts, Vermont, Ohio, and most of the federal courts, upon these statutes. These courts place their decision on the ground that the constitution, and act of congress above mentioned, refer to the judicial proceedings of courts of general jurisdiction, and not to inferior tribunals created by municipal law; for the act of congress requires the record to be certified by the clerk, with the seal of the court annexed, together with a certificate from the judge, chief justice, or magistrate of the court, as to the due form of the attestation. Justices of the peace, having no clerk, no official seal, and not being able to authenticate records in the manner required by the act of congress, their proceedings were not considered as coming within the purview of that act, but the admission of the copies of their proceedings as evidence was left to be regulated by the law of the state where they were proposed to be offered in evidence. (See 3 Cowen and Hill's Notes to Phillips on Evidence, 898, and the authorities there cited.) The introduction of the transcript of the proceedings of the justice of the peace in Hamilton county, as evidence, not being authorized by the acts of congress above referred to, and that matter being left to the law of our state, it will be necessary to examine the statute upon this subject enacted by the legislature. This statute is as follows: "The official certificate of any justice of the peace, living in any state of the United States, certifying any judgment by such justice rendered, with a certificate thereon sealed by the clerk of the county with the county seal, where such justice shall reside, certifying that he whose signature appears on such exemplifications was, at the date of such judgment, a justice of the peace, and qualified to act as such, shall be good and legal evidence in any court in this territory, to prove the facts contained in such exemplifications and nothing more." (1)

Were the transcript and certificates admissible in evidence under this statute? We think not. The statute requires

that the certificate of the justice should be followed by the certificate of the clerk of the county, sealed by him with the county seal. The certificate of the justice in this case is followed by the certificate of the clerk of the court of common pleas of Hamilton county. We cannot judicially know that the clerk of the court of common pleas is the clerk of the county; unless we take judicial cognizance of the laws of the state of Ohio, and say that the court of common pleas of Hamilton county is the county court, we must decide that the justice's transcript was inadmissible under the statute. There might be, for aught we in this case judicially know, a county court of Hamilton county, as well as a court of common pleas; the latter court could not be presumed to be the former, with any more propriety than the circuit court of one of the counties of Illinois could be presumed to be the county court. As individuals, we may know that in that state there is in every organized county a circuit court, as well as a county commissioner's court, and the clerk of the last mentioned court is, by the laws of that state, the only person authorized to certify as to the official character of justices of the peace. Were we to receive the certificate of the clerks of one of the circuit courts of Illinois, as evidence that any particular person was a justice, it might be very unsafe; for this clerk might have no farther means of knowing who are the justices of the peace, than those possessed by any other individual, and his certificate would be entitled to no farther credit. It is the officer who has peculiar means of knowledge as to who are the justices of the peace, alone, who can certify to their official existence; the officer with whom their bonds and oaths of office are filed, and to whom their resignations must be made. And here we answer an objection that may be urged, to wit: That some states have no county courts *eo nomine,* and that, to carry out the foregoing views, we must also decide, that judgments of justices in those states which have no county courts cannot be enforced in this state, because the transcripts of them cannot be certified to, according to the requisitions of the statute. Such is by no means a necessary consequence. To say that

no certificate could be received as to the official character of a justice of the peace, except the certificate of the clerk of the county, would be to put upon our statute a construction more literal than just or reasonable. We only decide that where such certificate is made by the clerk of any court other than the clerk of the county, the law of the state from which the transcript is brought should be produced, to show that he was the proper person to certify the same. See, upon this subject, 6 N. H., 567—570. We think, therefore, that the certificates appended to the transcript did not authorize its admission as evidence.

Did the parole testimony render it admissible? It was proved, by parole testimony, that said transcript had been presented to witness, and examined by him, and that he then admitted that the judgment had been rendered against him by said justice, before whom the alleged judgment purports to have been rendered; but witness could not say that the defendant admitted the transcript to be a true copy of the original record of said justice. Witness also stated, that at the time of said admissions, defendant, as part of the same conversation, said that said judgment so admitted to have been rendered against him was unjust, and that he had never paid it. The issue presented to the court was upon the plea of *nul tiel record.* This plea avers, in substance, that there is no record of such a judgment as that mentioned in the transcript. The admission of Gay, after examining the transcript, is, that that judgment was rendered against him by that justice. Making this admission upon an examination of the transcript, the testimony, if credited, would warrant the conclusion, that such a judgment did exist on the record of Coplen, the justice. It is but a fair construction of the admission, to say that it concedes the official character of the justice, the amount and character of the judgment, and that it was unsatisfied. Did the statement in the admission that the judgment of the justice was unjust, so vitiate the whole admission, as that the judgment of the court in the premises could not be based upon it? The issue was as to the existence of the judgment, and not whether it was just

or not.    The defendant in the court below admitted the existence of the judgment, and set up a defence which could not avail him under the issue; (1) if indeed he could set up such a defence in a court of law.    We see no error in the charge of the court to the jury, in reference to the faith and credit to be given to them.

We have also settled the last question presented by the bill of exceptions, that the justness of the judgment could not be inquired into in this action.    Not only would the issue in this case prevent such inquiry, but the weight of the author- ities shows that no such inquiry can be made at law, under any plea.

· The last question arising in the case is, did the plaintiff in the court below make out his case sufficiently, putting the most favorable construction on his testimony, to warrant a verdict in his favor?    The bill of exceptions shows that the testimony stated in it, and above recited, was all that was offered by either party.    Was it necessary for the plaintiff below to introduce the statute of Ohio, and show, affirmatively, that justices of the peace in that state have jurisdiction and au- thority to render such judgments as that set forth in the transcript?    The true doctrine, and the one established by the great weight of authorities, is this, that where the court of an- other state, whose judgment is sought to be enforced here, is a court of general jurisdiction, the presumption is in favor of its jurisdiction, and the onus of impeaching it rests with the defendant; where the court has but a limited and special jurisdiction, as that of justices of the peace, the statute of the state must be introduced to show, affirmatively, that the jus- tice had jurisdiction, for the courts of one state will not take judicial notice of the statutes of another.    See 3 Cowen and Hill's Notes, 906, referring to 19 John., 33., 9 Wend. 95; 2 Wils., 16; 1 Saund., 73, 74; 5 Cranch., 173; 1 Peters, C. C. 30; 8 Cowen, 311. .

. Where the judgment of the justice of the peace, and his jurisdiction, are duly shown, the same faith and credit are given to them, as is given to the judgments of a court of general

Gay *v.* Lloyd.

jurisdiction, authenticated under the act of congress, and is not subject to re-examination. The jurisdiction of the justice not having been proven, the court erred in permitting the transcript to be offered in evidence to the jury. The judgment of the court below is therefore reversed, and the cause is remanded to the court below for further proceedings not inconsistent with this decision.

Judgment reversed.

(1) The plea of *nul tiel record,* to an action on a judgment of a sister state, draws nothing into controversy except the existence of the record. *Goodrich* v. *Jenkins,* 6 Ham., 43.